### DAVIS *et al.* *v.* SOUTH SIDE MFG. CO. *et al.*

The relief sought in plaintiff's petition being based upon an alleged breach of a contract made by the defendant company with another party alleged in the petition to have acted in the transaction for the benefit and in the interest of the plaintiffs, and the petition failing to charge that the defendant had any knowledge that the party with whom it dealt was acting in such capacity, and not charging defendant with notice that any of the plaintiffs had any interest in the contract, or the business pertaining thereto; and it further appearing from the petition that the defendant, in a suit against the party with whom it had contracted, had obtained a judgment against such party individually, on account of his violation of the terms of the contract, it was not error for the judge to sustain a demurrer by defendant's counsel to the petition in this case, on the ground that it showed no privity of contract between the plaintiffs and defendant.

Argued April 26, — Decided May 12, 1900.

Equitable petition. Before Judge Henry. Floyd superior court. October 27, 1899.

*Dean & Dean,* for plaintiffs.
*Wright & Ewing* and *C. N. Featherston,* for defendants.

LEWIS, J. This action was brought by petitioners as ten separate and distinct partnerships, in each one of which G. H. Miller & Son are alleged to be members, against the South Side Manufacturing Company and the sheriff. The petition alleges, that petitioners are respectively partnerships engaged in the business of raising and marketing peaches on their respective partnership orchards, situated in the counties of Gordon and Bartow; that G. H. Miller & Son is a separate partnership, composed of G. H. Miller and John C. Miller, and as such partners they are common partners with said several partnerships. The defendant company is a non-resident body corporate, created under the laws of Virginia, with no agent or place of business within the State of Georgia, and owns no property within the State of Georgia, except as set forth in the petition. This company brought its suit in the city court of Floyd county against G. H. Miller & Son, for the purchase-money of the crates which were contracted to be furnished under the contract as set forth in paragraph 5 of the petition, in which cause the said company obtained a judgment against said G. H. Miller & Son, on the 15th day of June, 1899, for the principal sum of $1,982.97, besides interest; and upon said judgment execution will soon issue, and J. E. Camp, as sheriff, will proceed to collect the same, unless restrained by the court. The petition sets forth a statement that the defendant company is indebted to the respective partnerships in certain sums, the amount of indebtedness to each partnership being stated in figures opposite its name. In the 5th paragraph above referred to the petition charged that attachments had been sued out by the several partnerships against the defendant company, returnable to the July term, 1899, of Floyd superior court, and each of said attachments had been levied by service of summons of garnishment upon G. H. Miller & Son. Declarations had been filed in each of the attachment suits. In these declarations it was alleged by the respective partnerships that, under the terms of the partnership contract between the respective partnerships, it was the special duty of G. H. Miller & Son, as a member of said respective partnerships, to attend to procuring the packages necessary for shipping the fruit grown on said several partnership orchards, and also to

attend to the shipping and sale of said fruit; that in May, 1898, G. H. Miller & Son, in behalf of and for the benefit of said respective partnerships, made a contract with defendant company, whereby it contracted to sell and deliver material manufactured for the construction of crates, to be used in the shipping of peaches from the said several orchards. In said contract it was agreed that all of said material should be shipped from defendant's factory, beginning June 15, 1898, and that all should be shipped before July 1, 1898. When said contract was made, the petition charges, the defendant knew and was advised by G. H. Miller & Son that said material was to be used for the construction of crates in which to ship peaches grown and maturing in the peach season of 1898 to markets in large cities; and was further advised by Miller & Son that the peaches would be ready for shipment during the latter part of June and extending into the month of July, 1898; that defendant also knew it was necessary, and was contemplated between the contracting parties, that said material was to be received a considerable time in advance of the ripening of the peaches, in order that the material might be constructed into crates for distribution and use; and that defendant knew that "unless said material was received in due time, there would be great and special loss to petitioners on account of ripening and rotting of peaches." The defendant failed to carry out its contract to ship said crate material at the time and as agreed upon, but shipped the same too late to afford an opportunity to construct said material into crates in time to meet the necessities and requirements for the shipment of petitioner's peaches as the same matured. By reason of defendant's failure to carry out its contract, as aforesaid, plaintiffs suffered great loss and damage, which they alleged was particularly set forth in their declarations in attachment. Petitioners bring this suit in aid of their several attachments, alleging they have reason to believe that the sheriff will proceed, when execution has been issued on said judgment in favor of defendant against G. H. Miller & Son, to collect the same by levy and sale of the property of said Miller & Son, without regard to the summons of garnishment served upon said Miller & Son, and to pay over said sum so collected to the defendant company, and the same will be by

it carried beyond the State of Georgia. Petitioners pray for an injunction restraining the sheriff from collecting the debt from G. H. Miller & Son, and restraining the defendant company from proceeding to collect it; and ask that the fund be ordered held by Miller & Son, subject to the order of the court, to await the final determination of said attachment cases; and if the plaintiffs in said attachment cases, or any of them, should prevail, that the same be paid out pro rata, according to the amount of their said several attachment judgments.

To this petition a demurrer was filed by the defendants, on the general grounds that it did not set forth a cause for injunction, as prayed for, and on several special grounds. Among the special grounds are the following: That the petition set forth no privity between petitioners and the defendant company. That the private duties of Miller & Son, under articles of partnership undisclosed or unknown to the defendant company, can not bind said company. That the knowledge of the subcontracts to which material is to be applied and used in filling does not make the subcontractors privies with the defendant company, and liable on the breach of the original contract to said subcontractors. That paragraph 3 of the petition alleges the suit and judgment obtained by the defendant company against G. H. Miller & Son on this same alleged contract. The defendants in that suit filed pleas for these same special damages, alleging the same breach of contract here alleged, but withdrew them and allowed judgment to be rendered against them as alleged in the petition. That the matters sued on in said attachments are res adjudicata. That a partnership can not garnish one of its members. A plaintiff can not garnish himself. The petition alleges that G. H. Miller & Son in said contract acted for and in behalf of petitioners; and therefore Miller & Son, defendants in fi. fa. and in garnishment, are alter ego of petitioners. The garnishees are in privity with and represent the plaintiffs in attachment in the proceedings, and it is contrary to the principles of jurisprudence or good conscience to permit them to charge themselves as garnishees; and petitioners have filed no bond in this behalf to cover damages and costs that defendants may sustain, and have failed to deposit said money due upon said judgment in court,

but seek to retain possession of the same. · The court sustained this demurrer, to which judgment the plaintiffs except.

It appears from the above petition that the plaintiffs as ten separate partnerships were engaged in the business of growing and marketing peaches in the counties named, each firm being composed of three members, and Miller & Son being two of the three in each case. It seems that, by a partnership agreement of each firm, Miller & Son were charged with the duty of procuring for the firm each season crates for marketing its fruit; and that in May, 1898, they made with the defendant company a contract for the purchase of crate material; how much is not stated. It was to be used for the purpose of shipping peaches. While the petition declares that the purchase was made on behalf and for the benefit of the respective partnerships, it is nowhere alleged that the defendant company knew this fact, nor is it alleged what proportion was intended for each firm, nor that the defendant knew that the material was bought for or to be used by any other persons than Miller & Son themselves. It further appears that the defendant sued Miller & Son on that contract for the purchase-money of the material, and obtained a judgment; and that after this, these ten firms brought their ten several attachment suits against the defendant, and garnished Miller & Son to reach this purchase-money debt in judgment. While the petition is not by any means clear or definite in its allegations, yet we think the above is a fair statement of its purpose. There is not only nothing in it that charges any contract between the defendant and any one of the partnerships suing as plaintiffs in this case, but not even any knowledge or intimation of the fact that the firm of Miller & Son, with whom the defendant did actually contract and deal, were agents for these particular plaintiffs, or were interested with them or any one else as copartners in this business, was alleged. Miller & Son made with the defendant but a single contract in their own name, on their own credit, and for a single purchase. As contended by counsel for defendant, this could not be the contract of the ten firms jointly, for Miller & Son were not partners of them jointly, but of each separately; and it can not be the contract of each one or of any one of the different partnerships. We think it a fair

inference from the pleadings to say that Miller & Son, instead of undertaking to make separate contracts for each of these firms, elected to make in their own right a single contract for the purchase in gross of such a quantity of material as they estimated to be sufficient for these partnerships, and intended to distribute among these firms as their interests might severally require. It is manifest that the defendant's single contract with parties known to it, and for a single transaction by wholesale, could not, without its consent, be split into separate contracts with unknown parties. We think, therefore, that the most obvious ground of the demurrer which the court below was clearly right in sustaining was, that the petition upon its face showed no privity of contract between the plaintiffs and the defendant. Even upon this ground alone, then, the court did right in sustaining the demurrer to the petition; and we deem it unnecessary to enter into any discussion of the other grounds.

*Judgment affirmed. All concurring, except Fish, J., absent.*